**JOHNSON & JOHNSON, a New Jersey corporation; Ethicon, Inc., a New Jersey corporation; and Chicopee Manufacturing Corporation, a Massachusetts corporation, Plaintiffs,**

v.

**TEXTILE WORKERS UNION OF AMERICA, AFL–CIO, a labor organization, and Local No. 630, Textile Workers Union of America, AFL–CIO, Defendants.**

**Civ. No. 467–60.**

United States District Court
D. New Jersey.
June 10, 1960.

Carpenter, Bennett & Morrissey, Thomas L. Morrissey, Newark, N. J. (Harry Heher, Jr., New Brunswick, N. J., of counsel), for plaintiffs.

Kapelsohn, Lerner, Leuchter & Reitman, Irving Leuchter, Newark, N. J., for defendants.

MEANEY, District Judge.

Plaintiffs herein have applied for issuance of a preliminary and interlocutory injunction against defendants and seek to compel defendants to submit the subject matter of the dispute between the parties to arbitration.

Plaintiffs and defendants entered into almost identical collective bargaining contracts which are presently in effect. Among the provisions of the said contracts are the following two which are the bases of the respective arguments of the contending parties. The three plaintiffs will be treated alike as for all intents and purposes the matters to be adjudicated are the same for each.

"Article 2

"Grievance Procedure

"Section A: Grievance Procedure

"Any difference of opinion, controversy, or dispute, between the Employer and the Union, or between the Employer and any employee, concerning rates of pay, wages, hours of employment, or other conditions of employment, or concerning the interpretation or application of this Agreement, and which in the instance of difference of opinion, controversy, or dispute between the Employer and any employee, is not settled or adjusted by the Department Supervisor to the satisfaction of the employee concerned and the Union, shall be considered a grievance. No settlement of any grievance shall impose retroactivity beyond the date on which the grievance was filed.

"The following procedure, which may be initiated by either party, shall be applied and relied upon by both parties, as the sole and exclusive means of seeking adjustment of, and settling grievances.

\*     \*     \*     \*     \*     \*

"Step 5. By arbitration in accordance with Paragraphs 'B' and 'C' of this Article.

"Article 15

"Contract Re-Opener

"During the May, 1959 Contract Negotiations, a Gentlemen's Agreement was reached to the effect that any issues which cannot be resolved adequately through the grievance and arbitration procedure could be reviewed and discussed on May 15, 1960. Therefore, it was understood and agreed that either party may re-open the Contract sixty (60) days prior to May 15, 1960 for this purpose only. If no agreement is reached by May

15, 1960, then both parties are free to resort to economic pressure, such as a strike or lockout. This does not refer ·to wage or fringe benefits, for example, or any other items which are provided for in the Contract."

On March 11, 1960, defendants notified plaintiffs that they desired to reopen their contract under the terms of Article 15 above cited, insofar as the question of "pre-job testing" is concerned. It appears that the plaintiffs of late insist on their right to determine the qualifications and abilities of employees to be considered for promotion to certain specific jobs in their plants, before such promotion be made. The particular examination objected to included a written test. It would appear that heretofore the practice has been to place the employee in the job and subject him to scrutiny and observation after he had begun to operate in his new post, as the test for his fitness.

Previous to the March 11th notice, the parties had discussed their differences all to no avail. The defendants had taken the position that under Article 15 they desired to reopen the contract and bargain anew on the question in dispute. Plaintiffs had countered with the proposition that the machinery for arbitration was the appropriate procedure. Upon failure to reach an agreement on the subject matter of their discussions, the defendants called a strike, with attendant picketing, against all plaintiffs.

■ Examination of both provisions of the agreement leads the court to the following conclusions. The arbitration clause is comprehensive and includes the whole sphere of disputes about the subject matter of the agreement which may arise between the parties thereto. Time and time again such agreements, very largely at the insistence of labor organizations, have been construed as thus extensive. Article 15 must be read in conjunction with the inclusive content of Article 2. To give the significance to Article 15, indicated by the defendants, would nullify the effectiveness of the contract. To predetermine, at the will of either party, the inadequacy of arbitration procedure, without trial thereof, would render the contract a nihility. The only meaning which conveys any sense suggests that Article 15 becomes, effective if arbitration does not come to grips with the disputed question and no determination is reached.

■ The court therefore feels that that question of pre-job testing and its character are certainly matters for arbitration within the scheme of the contract, and as a consequence will decree specific performance of the agreement to arbitrate. That the court has such right has been determined by the Supreme Court in the case of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

■ There then arises the question of whether there resides in the court the right to grant the injunctive relief prayed for by the plaintiffs, in view of the categorical language of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., restricting the jurisdiction of any court of the United States to issue any restraining order or injunction in a case involving or growing out of a labor dispute. The request for an injunction in the instant case is based on § 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

In the Lincoln Mills case above referred to, Mr. Justice Douglas, speaking for the court, makes it evident that § 301 is more than jurisdictional and that the court agrees with the prepotent decisions of federal courts that the section quoted "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements, and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." 353 U.S. at page 451, 77 S.Ct. at page 912. This being so and in the light of the declaration of the Supreme Court in General Electric Co. v. Local 205, 353 U.S. 547, 548, 77 S.Ct. 921, 922, 1 L.Ed.2d

1028 (1957) that "the Norris-LaGuardia Act does not bar the issuance of an injunction to enforce the obligation to arbitrate grievance disputes" it is difficult to believe that with the power to direct specific performance the court is not also empowered to issue an injunction to prevent acts designed to frustrate the mandate of the court. In the case of American Smelting & Refining Co. v. Tacoma Smeltermen's Union, 175 F.Supp. 750, (W.D.Wash.1959) Judge Boldt gives an extended discussion of the problem involved in the present dispute and arrives at a similar conclusion.

The application of plaintiffs for preliminary injunctive relief is granted.